STATE OF NEBRASKA, APPELLEE, v. ALVARO BRAVO ESCAMILLA, APPELLANT.

155 N. W. 2d 344

Filed January 5, 1968. No. 36682.

Willard F. McGriff and Alfred J. Kortum, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

Defendant entered a guilty plea to a charge of robbery, and after receiving the maximum sentence provided by section 28-414, R. R. S. 1943, perfected an appeal to this court. Defendant assigns as error the fact that he was not represented by counsel at his arraignment or at the presentence hearing, as well as the severity of the sentence.

Defendant, a Mexican 22 years of age, had three previous felony convictions and was on parole at the time of the crime herein. About 1 a. m., April 2, 1967, defendant, possibly under the influence of intoxicating liquor and three yellow-jacket pills, stopped at the Wardman Hotel in Scottsbluff. After getting into an argument with the clerk, Mrs. Jean Ferguson, he put his hand in his pocket suggesting the presence of a gun, and demanded the money in the cash drawer which she handed over to him. He then ordered Mrs. Ferguson into the men's restroom and directed her to remove her clothes. She refused to do so, and a struggle ensued. She was left unconscious. The defendant was taken into custody approximately 5 hours later. Mrs. Ferguson sustained a skull fracture, bruises about her shoulders, a laceration on the right thumb as a result of a bite, and her eyes were gouged out of normal position. When found her eyes were outside of the lids, the eye muscles were torn, and the conjunctiva, or the skin around and covering the eyeballs and the inner side of the lids, was also torn. The medical testimony is that she will never see again.

Defendant, relying on Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, assigns as error the failure to furnish him assistance of counsel when he was brought into the station for questioning. There is no merit to this assignment. The undisputed evidence is that defendant was advised of his rights when he was first interviewed at the station. Within an hour thereafter he, together with his brother and sister-in-law with whom he resided, signed a consent to a search of his premises. This consent is as follows:

"April 2, 1967                                        8:00AM
"I hereby voluntarily give consent for Chief Richard Camper, Scottsbluff Police Department, to search the premises where we reside at 818 East Overland Ave., Scottsbluff, Nebraska.

"This consent is given freely and voluntarily without

threat or promises of any type. I have been advised of my right to remain silent, my right to the services of an attorney and the fact that an attorney will be appointed to represent me if I cannot afford to secure my own, the fact that any statement made and any evidence gathered as a result of this search could and would be used against me in a court of law.

"I also give consent for any other officers accompanying the Chief of Police to assist in the search of the apartment.

"RUDOLPH B. ESCAMILLA (Sgd.)
Rudolph B. Escamilla
"ALVARO B. ESCAMILLA (Sgd.)
Alvaro B. Escamilla
"VALENTINA ESCAMILLA (Sgd.)
Valentina Escamilla
"WITNESSED: Richard Camper (Sgd.)
Robert A. Lacy (Sgd.)"

The defendant's clothing and some latent fingerprints secured at the scene were sent to the F.B.I. laboratory for analysis, and he was held in custody. On the morning of April 6, 1967, defendant sent for the deputy sheriff and told him he wanted to sign a confession. In the presence of this deputy and the sheriff, he was fully advised of his rights and warned of the consequences of any statement. After receiving what the sheriff's office labels the "Miranda Warning," which is a printed form in evidence herein as exhibit 6, he wrote out and signed a confession, but first executed the following waiver:

"YOUR RIGHTS
"Place Sheriffs Office, Gering, Nebr
"Date Thursday April 6, 1967
"Time 12.30 PM     12:15 A. E.

"Before we ask you any questions, you must understand your rights.

"You have the right to remain silent.

"Anything you say can be used against you in court.

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

"If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

"If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

"WAIVER OF RIGHTS

"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

"Signed Alvaro B. Escamilla (Sgd.)

"Witness Steve Warrick (Sgd.)

"Witness Earl Yeoman (Sgd.)

"Time    12:15 PM         "

The right to counsel is a personal right and may be knowingly waived. State v. Brevet, 180 Neb. 616, 144 N. W. 2d 210.

The record discloses that when the defendant was arraigned in district court, the following occurred:

"THE COURT: Alvaro Bravo Escamilla, you have heard the crime charged in the information that has just been read to you by Mr. James Ponder, the County Attorney of Scotts Bluff County, Nebraska. Before proceeding further it becomes my duty to advise you that the crime charged is a felony, and you have a right to be represented by a lawyer in these proceedings. If you do not have the money with which to employ your own lawyer, the Court will appoint you a lawyer at the expense of the County of Scotts Bluff.

"Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Do you wish to be represented by a lawyer?

"THE DEFENDANT: No.

"THE COURT: You understand that you do have a right to have a lawyer, do you?

"THE DEFENDANT: Yes, I do.

"THE COURT: And is this choice not to have a lawyer your own choice made freely and voluntarily on your part?

"THE DEFENDANT: Yes, it is.

"THE COURT: And so you wish to proceed now without a lawyer?

"THE DEFENDANT: Yes.

"MR. PONDER: Your Honor, I might inquire of the defendant. Mr. Escamilla, isn't it a fact that prior to your last sentence to the Complex you were represented by counsel?

"THE DEFENDANT: Yes.

"MR. PONDER: And that was Mr. Kortum?

"THE DEFENDANT: Yes, it was.

"MR. PONDER: I see. And you know he is from the Public Defender's Office, is that correct.

"THE DEFENDANT: Yes.

"MR. PONDER: Are you acquainted with Mr. Mc-Griff?

"THE DEFENDANT: Not personally, no.

"MR. PONDER: You know, also, he is actually the Public Defender?

"THE DEFENDANT: Yes.

"MR. PONDER: These people are available to you if you want counsel.

"THE DEFENDANT: I understand.

"MR. PONDER: You understand that?

"THE DEFENDANT: Yes.

"THE COURT: So the Court understands it, you have waived the right to counsel, is that right?

"THE DEFENDANT: Yes.

"THE COURT: Let the record show that the defendant has waived his right to be represented by counsel and that the Court is of the opinion that his waiver is made freely and voluntarily."

After accepting defendant's plea and entering a finding of guilty, the trial court continued the matter until the next day for a presentence hearing. At that time defendant's confession was read into evidence. Testimony was adduced as to the condition of Mrs. Ferguson, and defendant's minister made a statement on behalf of the defendant, after which the court passed sentence.

Defendant's constitutional rights were fully explained to him prior to, during, and after the giving of the confession. The warning requirements of Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974, were clearly met herein. We are satisfied that defendant understood his rights and his confession having been freely and voluntarily given was properly admitted at the presentence hearing.

Defendant further assigns the assessment of a maximum penalty herein as error. We have repeatedly held that where the punishment of an offense created by statute is left to the discretion of the trial court within prescribed limits, a sentence imposed within those limits will not be disturbed on appeal unless there appears to be an abuse of discretion. State v. Konvalin, 179 Neb. 95, 136 N. W. 2d 227.

Section 29-2308, R. R. S. 1943, makes it the duty of this court, when proper proceedings are had, to review the evidence and to set aside any sentence which the evidence will not warrant, and further if the sentence is set aside to render such sentence as may be justified by the evidence. Anderson v. State, 26 Neb. 387, 41 N. W. 951.

Robbery is a major crime. The statute provides a maximum penalty of 50 years for the offense. As we said in Cherpinsky v. State, 122 Neb. 52, 238 N. W. 917:

"It is a well-known fact that criminals, engaged in committing crimes of this character, are potential murderers." Defendant, although only 22 years of age, is already a recidivist. There is nothing in this record which could be urged in extenuation of his acts. The crime committed is one of the most aggravated nature. Defendant showed no consideration for the sensibilities of his victim, and certainly his actions constituted inhuman brutality. His attempt to force his victim to disrobe, and his fiendishly brutal treatment of her requires the severest of penalties. The medical testimony indicates that a blow could not have caused the eye injuries sustained by the victim. Only deliberate gouging could have produced that result. The victim has been permanently blinded by defendant's act. If the maximum penalty is ever to be exacted, it is required herein.

What we said in Sundahl v. State, 154 Neb. 550, 48 N. W. 2d 689, in discussing another section of our criminal statutes, is particularly appropriate herein: "The Legislature has fixed the public policy of this state and determined what shall be done in cases of this character. It is a policy of long standing. It is a trite statement, but it is our duty to enforce the law." There was no abuse of discretion by the trial court in assessing the maximum penalty herein.

For the reasons stated, we find that the assignment of errors cannot be sustained. The judgment of the district court should be and is affirmed.

AFFIRMED.